## WILLIAM RICH *v.* THE STATE.

1. PRACTICE IN THIS COURT.—In felony cases this court will investigate the record, though no errors have been assigned; and, if satisfied that the conviction is not in accordance with law, will reverse, unless the error has been cured by waiver or otherwise.

2. SAME.—The record of this felony case, after setting out the arraignment and plea of the accused, states that "the following jury was impaneled," and then recites the names of eleven jurors. *Held*, that it cannot be

inferred or presumed that the accused was tried by a full jury, nor that the jury were sworn according to law.

3. NEW TRIAL TO OBTAIN EVIDENCE OF AN ACQUITTED CO-DEFENDANT. Two defendants being jointly tried for murder, one was acquitted, but the other was convicted of murder in the second degree; whereupon the latter moved for a new trial on the ground that his acquitted co-defendant was a material witness in his behalf, and supported his motion with the witness' affidavit, disclosing his presence at the rencounter, and statements respecting it. *Held,* that the witness was rendered competent by his acquittal, and no diligence could have procured his testimony prior thereto ; wherefore, if his testimony was material to the defense of the appellant, there may have been error in refusing a new trial.

APPEAL from the Criminal District Court of McKinney City. Tried below before the Hon. S. HARE.

No brief for the appellant.

*H. H. Boone*, Attorney General, for the State.

WINKLER, J. The appellant, William Rich, and James Rich were indicted and tried in the criminal district court of McKinney City for the murder of one Jeremiah Rich, alleged to have been committed in the county of Collin on the 16th day of August, 1875.

The accused were put upon their trial in said court jointly, the trial resulting in a verdict of not guilty so far as James Rich was concerned, and he was discharged by the court. As to William Rich, the appellant, he was convicted of murder in the second degree, and his punishment fixed by the verdict of the jury at six years and seven months' imprisonment in the state penitentiary.

The appellant, William Rich, moved for a new trial, based, 1st, upon errors in the charge of the court ; 2d, error in the court in not instructing the jury as to the law of manslaughter ; 3d and 4th, that the verdict is contrary to the evidence ; and the 5th set out in these words : " That the evidence of James Rich, one of the co-defendants in the trial, since his trial and acquittal, has been discovered to be

material, which is shown by his affidavit hereto attached and made part of this application for new trial;'' and here follows the sworn affidavit of James Rich, set out in the record.

The motion for new trial was overruled, and to this ruling the defendant excepted, and gave notice of appeal. The defendant, William Rich, took a bill of exceptions, in which he sets out substantially the several grounds alleged in his motion for new trial, which was allowed and signed by the judge. The case comes before us on this bill of exceptions, and without either an assignment of errors or any brief or oral argument on the part of the appellant, or brief or argument on the part of the state. In this state of the case this court is placed in the embarrassing condition of examining the record without errors assigned, and, unaided by argument of counsel, to grope its way through the record, in order to determine whether the judgment should be affirmed or reversed. In a civil case, or even in a case of misdemeanor, we might excuse ourselves from responsibility by saying that, inasmuch as the appellant has not seen proper to point out any substantial error, we do not feel called upon to search in the record for grounds upon which to reverse the judgment. But in a case of felony the practice of the supreme court of this state, before the organization of the court of appeals, has been, as we understand it, to look to the record, and, if satisfied that the accused has not been convicted according to law, will reverse the judgment, though the error be not assigned, when the error is of such a character that it cannot be considered as waived or cured by judgment. *Sutton* v. *The State*, 41 Texas, 513. This rule has been followed in several cases decided by this court at the present term. See *Trammell* v. *The State*, *ante* p. 121; *Lewis White* v. *The State*, *post* p. 211.

In looking into the record we find what we deem to be errors, committed on the trial of the appellant, which we

are not authorized to presume were waived by the accused or cured by the judgment, namely : that the record does not show that the jury were sworn, either by having administered to them the oath required by statute in capital cases, or in fact in any other manner, nor does it appear that the accused was tried by a legal jury.

The record on the subject, and which is the only guide we have, is as follows. After stating the case as *The State of Texas* v. *James and William Rich*, the entry is : " This day this cause being called for trial, thereupon came the parties, by their attorneys, and announced themselves ready for trial. The defendants, being duly arraigned by the court, and after the reading of the indictment, entered a plea, each for himself, of not guilty. Whereupon the court impaneled the following jury : David Doyles, L. J. Powell, T. B. Scott, Wm. King, Jno. George, A. Brown, W. P. Wolf, J. P. Coffey, J. L. Montgomery, W. P. Lamb, and C. C. Frost, and proceeded with the investigation of this cause ; and, the day having been consumed in the investigation, the court adjourned until to-morrow morning at 8 1-2 o'clock." And the records show that the *investigation* was continued on the next day, and, this being Saturday, it seems the court met on Monday and continued " the investigation of the above entitled cause " to its termination and the rendition of the verdict, as above mentioned. The record nowhere shows that the jury were sworn in any manner. It may be said that the expression " *the court impaneled the following jury* " necessarily implies that the jury were sworn, but we have examined Bouvier and Webster, and have been unable to find a definition of the word *empaneled* or impaneled which would authorize this construction. In American practice the word impaneled is used of a jury drawn for trial of a particular case by the clerk, as well as a general list of jurors returned by the sheriff.

" To write the names of jurors on a *panel*," etc.—1 Bouv. L. Dic., title impanel, and authorities there cited.

"Empanel: A list of jurors."—Webster.

"Impanel: To write or enter, as the names of a jury, in a list, or on a piece of parchment, called a *panel*," etc. —Webster.

Or it may be contended that the court would not have overlooked so important a feature in the trial of so important a case as the swearing of the jury. We concede that it is not probable that so important a fact was omitted, but it is the very object of making the record to perpetuate the transactions, and, the record purporting to state the transaction precisely as it occurred, what right have we to presume that it occurred in some other way? Again, the law requires that a jury for the trial of one accused of a felony shall be composed of twelve men. Now, when the record states that "the court impaneled the following jury," and then goes on to give the names of eleven, and but eleven, persons, can we presume in the face of the record that the jury was composed of twelve good and lawful men?

We might, perhaps, be warranted in presuming that each of the jurors named was a competent juror; or, if the record had stated that the jury was composed of twelve competent jurors, we might be authorized to presume the clerk had omitted a name in transcribing the record; but, in the absence of any such statement, can we, by presuming, supply the omission?—and which we must do in order to come to the conclusion that the appellant has been deprived of his liberty by due course of law, as set out in the Bill of Rights. "The judgment of the court cannot depend on speculations or probabilities as to the correctness or accuracy of the transcripts upon which we are required to act. If they are erroneous, it is the duty of the parties interested in, or to be affected by, them to point out their errors, and take the proper steps

for their correction. When this is not done, evidently the court must treat and act upon them as being in all things correct as certified by the clerk." *Gorman* v. *The State,* 41 Texas, 221.

As to the motion for a new trial, we are not prepared to say that the court did not err in refusing it. The acquittal of James Rich, who made the affidavit as to his knowledge of the rencounter which resulted in the killing of Jeremiah Rich, made him a competent witness. No diligence could have procured his testimony until after the trial which resulted in his acquittal. As to its materiality, we do not deem it proper to say anything, in view of the disposition we propose to make of the case. We do not feel authorized in presuming anything contrary to the record, in this case or in any case, against the life or the liberty of the citizen.

For the several reasons above set forth the judgment will be reversed and the cause remanded.

*Reversed and remanded.*